Battle, J.
 

 It seems to us that there is no difficulty in any of the objections to testimony, made by the plaintiff, except the last. The first objection is directly and fully answered by the case of
 
 Ingram
 
 v.
 
 Watkins,
 
 1 Dev. & Bat. Rep. 442, where it was held, that to impeach the credibility of a witness, by proving that he swore differently as to a particular fact on a former trial, it is not necessaiy that the impeaching witness should be able
 
 to
 
 state all that the impeached witness then deposed. It is sufficient, if he is able to prove the repugnancy as to the particular fact, with regard to which it is alleged to exist.
 

 The deed from Edwards to Sullivan was certainly competent for the purpose for which it was offered. The witness Bryant had stated, that, at the time he subscribed the bond in question as a witness, Sullivan told him that it was for the purchase of all the interest of Ed
 
 *305
 
 wards in his mother’s estate. The deed then was material to show that Edwards had, at that time, no such interest to be the subject of a contract, and also to show the falsity of the witness Bryant or the frailty of his memory. The cases of
 
 Selby
 
 v. Clark, 4 Hawks Rep. 265, and
 
 Bethel
 
 v.
 
 Moore, 2
 
 Dev. and Bat. Rep. 311, without adverting to others, show that the proof of the hand writing of the subscribing witness who lived out of the State, was sufficient proof of the deed to justify its introduction. The last objection raises a question of much practical importance, relative to the manner, in which a witness may be impeached for a supposed bias in favour of one of the parties to a suit. The question is, whether, after a witness has given his testimony for the party who calls him, another witness may be asked by the adverse party to state, whether he has not heard the first witness make a statement or declaration showing his bias, feeling or partiality in favour of the party, who has examined him, without having first asked such witness whether he has made such statement or declaration. "We think that this question must be answered in the negative, both upon principle and upon the -authority of adjudged cases. The only legitimate object of atrial is the ascertainment of the truth of the matter in issue between the litigating parties, and all the rules which are or may be established for conducting its proceedings, particularly for the manner of examining, cross-examining, attacking and supporting witnesses, ought to have this great end in view. Among these rules, there is scarcely one, which requires to be settled with more care, than that which is intended to regulate the mode by which the credibility of a witness, either while under examination or after his examination has closed, may be impeached. It is undoubtedly necessary and proper, that the adverse party should have every fair opportunity, by cross-examination or otherwise, of testing the fairness and impartiality of a witness offered against him, as well as of enquiring into the ex
 
 *306
 
 tent and accuracy of his memory, his opportunities of observation and the respectability of his character. But such witness ought, at the same time, in justice both to himself and to the party who calls him, to be protected from having his testimony and his character misrepresented and misunderstood by the introduction of evidence on a sudden and by surprise, which, from its nature he could not be expected to come prepared to meet, and which, had he been apprised of it, he could easily and satisfactorily have explained. Of such a character is the evidence, which is offered for the purpose of showing’ by the statement or declaration of a witness made previous to the trial, that he has an undue leaning towards the party who has called him. This kind of testimony partakes in many respects of the character of collateral ’.evidence, though from its bearing directly upon the cause jin affecting the credibility of the witness, it is exempted from the operation of the rules relative to testimony purely collateral. But being in many respects collateral, neither the witness, nor the party who calls him, can be expected to be prepared to meet and explain it, and therefore ought not to be required to do so unless the attention of the witness is drawn to it by a question put directly for that purpose. Accordingly, we find it stated by all the Judges of England on the Queen’s trial,
 
 2 Brod. and Bing.
 
 314, (6 Eng C. L. Rep. 130,) that it is the usual practice of the Courts below, and a practice to which there is no exception, that if it be intended to bring the-credit of a witness into question by proof of any thing that he may have said or declared, touching the cause,, the witness is first asked upon cross-examination, whether or no, he has said or declared that which is intended to be proved. The same question was decided by this-Court in the case of the
 
 State
 
 v.
 
 Patterson, 2
 
 Ired. Rep. 346. In that case the defendant’s counsel proposed to introduce a witness to prove that Jacob and Daniel Cluck, who had been examined for the State, had told
 
 *307
 
 bim, that the prosecutor had paid them for coming from Tennessee to this State as witnesses. These witnesses had been previously asked, on cross-examination, whether the prosecutor had not paid them, but they had not been asked whether they had so stated to the defendant’s witness. The testimony was objected to and rejected by the Court. After his conviction, the rejection of this testimony formed one of the grounds, on which the defendant based a motion for a new trial. But the motion was over-ruled in the Court below, and the decision was sustained on an appeal to this Court. Judge Gaston, in delivering the opinion of the Court, after remarking upon
 
 the
 
 character of
 
 the
 
 testimony and the purpose for which it was properly admissible, to-wit, to impeach the credibility of the witness, compared it to the mode of attacking his credibility by proving inconsistent declarations as to his temper, disposition, or conduct, in relation to the cause or the parties, and concluded by pronouncing, in effect, that the two modes were similar, if not identical, in character, and therefore subject to the same rule. To the same effect are the remarks made by the Chief Justice in delivering the opinion of the Court in
 
 Pipkin
 
 v.
 
 Bond,
 
 5 Ired. Eq. 107. But it maybe objected, that, if the adverse party fail, from inadvertence or other cause, to put the preliminary question to the witness upon his cross-examination, he will loose the opportunity of introducing testimony, important in ascertaining the truthfulness of the witness. To this it may be replied, that the Court may, and in a proper case undoubtedly will, permit him to recall the witness for the purpose of asking the necessary question. And if it be further objected, that the witness may have left the Court, upon the supposition that his attendance is no longer necessary, so that he cannot be recalled, then it may be answered, that it is much better for the purposes of justice, that the oversight of the party should operate to the exclusion of the
 
 *308
 
 impeaching testimony, than that the witness, who is proposed to be impeached, and the party who calls him, should be subjected to the great injustice, which would often be done, if evidence of this sort could be adduced, without any opportunity for explanation being afforded to such witness or party. Indeed if there were reason to believe, that the witness had left the Court by collusion with the party, who has introduced him, then the presiding Judge might, and no doubt would, dispense with the preliminary question. In the case before us, the testimony, which we must suppose was offered by the defen* dant to impeach the credibility of the witness, Bryant, by showing his leaning in favour of the plaintiff, was received by the Court, after objection, without requiring the previous question to be put to the witness, which we think was erroneous.
 

 Fpr this error the judgment must be reversed and a
 
 Venire de novo
 
 awarded.
 

 pm CuftiAM. Judgment reversed and
 
 venire de
 
 novo,