James K. **JOHNSON**, Respondent,

v.

**SOUTHERN MINNESOTA
MACHINERY SALES,
INC.**, Defendant,

**Houdaille Industries, Inc.**, Appellant,

and

**HOUDAILLE INDUSTRIES, INC.**,
Third Party Plaintiff, Appellant,

v.

**GILBERTSON, INC.**, d/b/a Dodge
Feeder Systems, Third Party
Defendant, Respondent.

Nos. C0–90–906, C6–90–392.

Court of Appeals of Minnesota.

Sept. 4, 1990.

Joseph F. Chase, O'Brien, Ehrick, Wolf, Deaner & Downing, Rochester and Mark M. Walbran, Walbran, Walbran & Walbran, Owatonna, for James K. Johnson, respondent.

Duane E. Arndt, Arndt & Benton, P.A., Minneapolis, for Houdaille Industries, Inc., appellant.

Barbara M. Burke Cousineau, McGuire, Shaughnessy & Anderson, Chartered, Minneapolis, for Gilbertson, Inc., d/b/a Dodge Feeder Systems, third party defendant, respondent.

Considered and decided by LANSING, P.J., and SCHUMACHER and MULALLY,* JJ.

## OPINION

LANSING, Judge.

After a jury verdict for James Johnson on his product liability claims, Houdaille Industries, the manufacturer of the product, moved for judgment notwithstanding the verdict and in the alternative, a new trial. The trial court granted JNOV, but did not rule on the alternative new trial motion. On appeal in *Johnson v. Southern Minnesota Machinery Sales, et al.*, 442 N.W.2d 843 (Minn.App.1989), *pet. for rev. denied* (Minn. Sept. 21, 1989), *pet. for reh'g denied* (Minn. Oct. 19, 1989) (*Johnson I*) we reversed the JNOV. Houdaille unsuccessfully renewed its new trial motion in the trial court. This appeal is from the trial court's denial of the new trial motion and its rulings on interest, costs and disbursements. We affirm on the issues raised by Houdaille but remand on Johnson's request for a corrected preverdict interest on future damages.

Affirmed and remanded for modification.

## FACTS

James Johnson severely injured his left hand in making a "freehand cut" on a "Powermatic 66" table saw manufactured by Houdaille Industries, Inc. The jury determined that Houdaille was 20% at fault and Johnson's employer was 80% at fault.

The trial court granted Houdaille's motion for JNOV on a theory that Johnson's primary assumption of the risk of operating the saw without a blade guard in place preponderated over any fault of Houdaille. This court reversed the JNOV and reinstated the verdict. (*Johnson I*.)

After the supreme court denied review and rehearing in *Johnson I*, Houdaille renewed its alternative motion for a new trial. The trial court denied Houdaille's motion on three separate grounds: (1) waiver, (2) failure to request remand as part of appeal, and (3) a new trial was not justified. The trial court entered judgment for the verdict amount, $322,045.80, preverdict interest of $50,874.82, postverdict interest of $40,756.72, and costs and disbursements of $10,672.75, totaling $424,350.09. Houdaille appeals and in a consolidated case Johnson requests review and modification of the preverdict interest calculation on future damages.

## ISSUES

### I.

Did the trial court err in denying the manufacturer's postappeal motion for a new trial?

### II.

Did the trial court correctly compute preverdict interest?

### III.

Did the trial court abuse its discretion in awarding costs and disbursements?

## ANALYSIS

### I.

When a motion for JNOV includes an alternative motion for a new trial, the trial court, if granting the JNOV,

> shall also rule on the motion for a new trial * * * by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

specify the grounds for granting or denying the motion for the new trial. Minn.R.Civ.P. 50.02(d).

Minnesota has permitted alternative JNOV and new trial motions for over 70 years. *See* 1917 Minn.Laws, ch. 24, p. 40–41. Originally, if JNOV was granted the new trial ruling was deferred until after appeal. *See Kies v. Searles,* 146 Minn. 359, 362, 178 N.W. 811, 812 (1920); *Trovatten v. Hanson,* 171 Minn. 130, 213 N.W. 536 (1927). In 1952 the new Rules of Civil Procedure required a conditional ruling on the alternative new trial motion but the conditional ruling was generally not reviewable. *See Satter v. Turner,* 257 Minn. 145, 156–58, 100 N.W.2d 660, 668–69 (1960); *see also Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 253–54, 61 S.Ct. 189, 195–96, 85 L.Ed. 147 (1940) (similar approach under federal rule).

In 1967 the Minnesota Supreme Court determined that a conditional new trial order was reviewable in the same appeal as the JNOV. *See McCormack v. Hankscraft Co., Inc.,* 278 Minn. 322, 343, 154 N.W.2d 488, 502–03 (1967) (overruling *Satter*). The 1968 revision of Minnesota Rule of Civil Procedure 50.02 codified this practice. The advisory committee note explained that "the effect of this amendment is to encourage a single appeal rather than multiple appeals." This procedure has been in place for over 20 years.

■ When the trial court granted Houdaille's request for JNOV, it incorrectly determined that the new trial motion was "moot," and failed to provide the ruling required by Rule 50.02(d). Failure to rule on the new trial motion was error. *See, e.g., Mays v. Pioneer Lumber Corp.,* 502 F.2d 106, 109 (4th Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975). *See also Nodak Oil Co. v. Mobil Oil Corp.,* 526 F.2d 798, 798–99 (8th Cir. 1975) (U.S. Supreme Court has established an "inflexible command" to rule conditionally on new trial motions).

When Johnson's counsel, in two letters and at a pretrial conference, appropriately called the court's attention to its failure to rule on the alternative new trial motion, Houdaille, inexplicably responded by informing the court in writing "that any further ruling is unnecessary." Houdaille now cites the court's failure to rule as reversible error. It might reasonably be determined that Houdaille has waived its motion for a new trial. We are reluctant to base our holding on waiver, however, because inclusive and timely rulings are vital to an ordered appellate process.

In considering the trial court's second basis, Houdaille's failure to request remand in *Johnson I,* we confront the same policy problems. As a general rule, the failure of a party to pursue alternative theories at the trial court level, or at least to alert the appellate court that there are additional issues which remain undecided, bars further consideration of such theories by the trial court. *Mattson v. Underwriters At Lloyds Of London,* 414 N.W.2d 717, 721–22 (Minn.1987). To require Houdaille to preserve a right to a ruling to which it was entitled in the first instance is not appropriate. Although we recognize Houdaille's contribution to the confused procedure, we review the ruling on its merits, the court's third basis, that Houdaille has not shown that a new trial is justified.

To support its postappeal motion for a new trial Houdaille cites three grounds: (1) the verdict was excessive, (2) there were prejudicial errors of law, and (3) the verdict was contrary to law and evidence. These are substantially the same issues raised by Houdaille in its original alternative new trial motion. We address them separately.

■ 1. *Excessive damages award.* Generally, an appellate court will not interfere with a damage award unless a failure to do so would be "shocking" or would result in "plain injustice." *Dawydowycz v. Quady,* 300 Minn. 436, 440, 220 N.W.2d 478, 480–81 (1974) (citing *DelMedico v. Coats,* 295 Minn. 226, 231, 203 N.W.2d 860, 864 (1973)).

The jury's damage award is not shocking, nor is it disproportionate to the evidence of Johnson's painful injury, prolonged medical treatment (including six operations), and ultimate loss of four fingers

on his left hand. The trial court did not abuse its discretion by refusing to grant a new trial on the issue of excessive damages.

■ 2. *Prejudicial errors of law.* Houdaille disputes the admissibility of the expert testimony of Gerald Rennell. Rennell's survey testimony was offered for a limited purpose and Houdaille's counsel specifically stated he had no objection. The record provides an adequate basis to support the trial court's discretionary ruling on foundation, and Houdaille's failure to object to the expert testimony at trial precludes raising the issue for the first time on appeal. Houdaille's appellate challenge to a videotaped demonstration of the use of the saw is similarly foreclosed by failure to object in the trial court. *See Helm v. El Rehbein & Son, Inc.,* 257 N.W.2d 584, 587 n. 2 (Minn.1977).

Houdaille's second allegation of prejudicial error relates to the trial court's instructions on assumption of risk. In *Johnson I* this court directly addressed the issue of jury instructions and held that Johnson did not assume the risk of injury, and that "(t)he case was submitted to the jury with proper instructions." *Johnson I,* 442 N.W.2d at 848. This determination is the law of the case and will not be readjudicated in a second appeal. *See Lange v. Nelson–Ryan Flight Service, Inc.,* 263 Minn. 152, 155, 116 N.W.2d 266, 269 (1962), *cert. denied,* 371 U.S. 953, 83 S.Ct. 508, 9 L.Ed.2d 500 (1963).

Similarly Houdaille's claim that he was entitled to a directed verdict at the close of the evidence was also settled by the *Johnson I* holding that "(t)he jury had a reasonable basis for its verdict," and that verdict could not be set aside. *Johnson I,* 442 N.W.2d at 848. A trial court may direct a verdict only when "no jury could reasonably decide to the contrary". *See Dahlbeck v. Dico Co., Inc.,* 355 N.W.2d 157, 163 (Minn.App.1984).

■ Finally, Houdaille challenges testimony of Johnson's expert witness, Dr. Tarald Kvalseth, a "human factors engineer" as testimony on the ultimate issue of whether Johnson was negligent in using the table saw. Opinion testimony embracing an ultimate issue is permitted so long as "the witness is qualified and the opinion would be helpful to or assist the jury * * *." *See* Minn.R.Evid. 704 comment.

The trial court's discretion on whether Dr. Kvalseth's opinion was of assistance to the jury is broad. The judge could reasonably have determined that Kvalseth's testimony assisted the jury in understanding an individual's reaction to risk and how these "human factors" are accounted for in designing machinery. There was sufficient foundation for the testimony and Kvalseth was exhaustively cross-examined.

3. *Verdict contrary to evidence and law.* Houdaille challenges the jury's apportionment of fault, the disregard of Johnson's "assumption of risk", and "misuse" of the saw. *Johnson I* held that the verdict was contrary to neither law nor evidence, and that holding is the law of this case.

The granting of a motion for a new trial is discretionary and the trial court's ruling will be reversed only for a clear abuse of discretion. *City of Ogema v. Bevins,* 341 N.W.2d 298, 299 (Minn.App.1983) (citing *Connolly v. Nicollet Hotel,* 258 Minn. 405, 104 N.W.2d 721 (1960)). The trial court did not abuse its discretion in determining that Houdaille's alleged grounds did not justify a new trial.

## II.

Both Houdaille and Johnson raise issues on the computation of pretrial interest. The trial court's order for entry of judgment includes preverdict interest of $50,-874.82, and postverdict interest of $40,-756.72. There is apparently no dispute on the postverdict figure. We address first Houdaille's contention that its unanswered settlement offer of $3,000 on April 15, 1985, limited the prejudgment interest.

Preverdict interest on pecuniary damages is computed from the date of the commencement of the action. *See* Minn. Stat. § 549.09, subd. 1(b). If either party serves a written offer of settlement, however, the other party has 60 days in which

to accept the offer or make a counteroffer. *Id.* Moreover,

> [i]f the amount of the losing party's offer was closer to the judgment than the prevailing party's offer, the prevailing party shall receive interest only on the amount of the settlement offer or the judgment, *whichever is less,* and only from the time the action was commenced * * * until the time the settlement offer was made.

*Id.* (emphasis added).

Johnson does not dispute that it did not respond to Houdaille's offer, and agrees that its failure to respond would constitute a counteroffer, but only if the original offer was valid. Johnson disputes the validity of the offer because it did not account for the employer's worker's compensation subrogation interest, as required by *Hodder v. Goodyear Tire & Rubber Co.,* 426 N.W.2d 826 (Minn.1988), *cert. denied,* ―― U.S. ――, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989).

In *Hodder,* the Minnesota Supreme Court held:

> [I]n an employee's third-party tort action, for the purposes of the offer-counteroffer provision of the prejudgment interest statute, any offer must treat the employee and the employer as one party, and any settlement offer, to be valid, must encompass the interests of both the employee and the employer.

*Id.* at 840–41.

■ Houdaille's April 15, 1985 letter containing the $3,000 settlement does not "treat the employee and the employer as one party," nor does it "encompass the interests of both the employee and the employer." The letter specifically states that the offer is not intended to account for the employer's subrogation interest resulting from worker's compensation payments. This is not a valid settlement offer and the trial court did not err in figuring preverdict interest based on the full amount of the jury award rather than on Houdaille's purported settlement offer of $3,000.

In his original motion for an award of preverdict interest, Johnson requested interest only on the past damages portion of the award, because the current version of § 549.09 specifically disallowed payment of preverdict interest on "judgments for future damages." Minn.Stat. § 549.09, subd. 1(b)(3). Because his case was pending prior to the August 1, 1986 effective date of the current statute, Johnson is entitled to preverdict interest on future as well as past damages. *See Hodder,* 426 N.W.2d at 841, n. 18; *see also Herbst v. Northern States Power Co.,* 432 N.W.2d 463, 468–69 (Minn.App.1988), *pet. for rev. denied* (Minn. Feb. 10, 1989).

### III.

■ The court granted Johnson's motion for taxation of costs of $10,672.75, including $1,587.17 for pretrial depositions, and expert witness fees of $8,669.50. The fact that a deposition was not used at trial does not bar deposition costs. Houdaille advances no other basis that would make the deposition costs unreasonable, and we hold that the allowance of costs was within the discretion of the trial judge. *See* Minn. Stat. § 549.04 (1983); *Jonsson v. Ames Construction, Inc.,* 409 N.W.2d 560, 563 (Minn.App.1987), *pet. for rev. denied* (Minn. Sept. 30, 1987).

■ We are also unpersuaded by Houdaille's objection to the taxation for expert witness fees. Rule 11 of the District Court Code of Rules does not impose an inflexible limit on expert fees which bars compensation for preparations outside the courtroom if it is necessary for testimony. *See Mohwinkel v. City of North St. Paul,* 357 N.W.2d 174, 177 (Minn.App.1984), *pet. for rev. denied* (Minn. Nov. 6, 1984). Considering the complexity of the litigation and the difficulty of proving a design defect claim, the taxed costs are modest.

### DECISION

We affirm the trial court's order denying a new trial and also affirm the trial court's refusal to limit preverdict interest. We remand for modification of the interest computation to include preverdict interest on future damages.

Affirmed and remanded for modification.